THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ELMER RIVERA, Defendant-Appellant.

Second District   Nos. 2—89—0194 through 2—89—0200 cons.

Opinion filed April 25, 1991.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Elmer Rivera, entered a plea of guilty to six counts of burglary and one count of escape in the circuit court of Lake County. He received a term of probation but subsequently violated it. Following a sentencing hearing after revocation of defendant's probation, the trial court divided the burglary convictions into three groups and imposed concurrent four-year terms of imprisonment for each conviction in each group. It also imposed a four-year term for the escape conviction. All four four-year terms of imprisonment were to run consecutively to one another for a total of 16 years' imprisonment. After a motion to reconsider the sentences was heard, the trial court divided the burglary convictions into two groups and imposed six-year concurrent terms for each conviction in each group. A four-year sentence for the escape conviction remained, and all three groups of sentences were to run consecutively to one another for a

total of 16 years' imprisonment. Defendant appeals and claims that the sentences are excessive.

On April 20, 1988, indictments were returned against defendant which charged him with 10 counts of burglary, one count of attempt (burglary), and one count of escape. At a hearing on June 2, 1988, the State informed the court of its plea negotiations with defendant. Pursuant to negotiations, defendant agreed to plead guilty to six counts of burglary and one count of escape; the remaining counts would be nol-prossed. In exchange the State would not recommend anything more than eight years in the Department of Corrections in total for all seven convictions, including a mandatory consecutive sentence required for escape.

The court advised defendant pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402) and then heard the factual basis for each count. In each burglary charge, a business establishment was involved, and almost all involved entry through the rooftop. The offenses occurred within a few weeks of one another. The factual basis for the escape count showed that on April 12, 1988, Waukegan police detective Richard Davis was remanding defendant to the Lake County jail when defendant broke free and ran away. Defendant was chased and caught by Davis. Defendant stipulated to the facts, and the trial court conditionally accepted defendant's plea.

A sentencing hearing was held on July 6, 1988. Defendant and the State entered a stipulation regarding the factual basis of the counts which were nol-prossed by the State following defendant's guilty plea. The State called Detective Davis to testify in aggravation. He spoke to defendant's mother on April 11, 1988, following defendant's arrest. She indicated that defendant had returned to Illinois from New York in February or March 1988, because he was in some type of trouble in New York. Davis also spoke to defendant's stepfather. He told Davis that he would not allow defendant to live in the house because defendant had been in trouble since returning to Illinois. He did not want defendant to influence defendant's younger sister who lived at home. He also told Davis that defendant had asked for money for a plane ticket to New York prior to defendant's arrest.

Davis described defendant's escape from Davis' custody in April 1988. While chasing defendant, Davis fractured his foot and could not perform his normal duties as a police officer for about two months. Defendant told Davis that he learned how to break into business places from his uncle while defendant lived in New York. Davis also testified that there was an outstanding juvenile warrant for

fourth-degree arson against defendant in New York since an arrest in December 1984.

Defendant testified in his own behalf. He was 17 years old. He had not seen his father for about seven years. Defendant said that he was beaten by his father and that he observed his father beat his mother and threaten her life. His father had a drug problem.

After defendant's mother began living with her boyfriend, defendant did not get along with him. Defendant was sent to live in Puerto Rico when he was 13 years old. Defendant returned to Illinois but again was sent away to live in New York with his grandmother. His uncles in New York were drug dealers, and one of them committed burglaries.

Defendant said that he received his G.E.D. while he was in the Lake County jail. He told the court he would follow the rules of intensive probation because he had learned a lesson and wanted to improve his life. Defendant read a letter that he wrote to the trial judge the day before the hearing. In the letter defendant asked the court for mercy and admitted having made mistakes.

During cross-examination defendant admitted being arrested as a juvenile for arson in New York and not appearing for court. He denied beating his mother. He claimed his mother wanted him to return home despite a contrary indication in the presentence report. Defendant admitted being fired for "stealing" from Zayre Department store about a year ago.

Following arguments by counsel, the court sentenced defendant to 48 months of intensive probation on each of the seven counts to run concurrently. He was sentenced to an 18-month term of periodic imprisonment, but upon availability of a bed in the halfway house, defendant was to be moved there. Defendant was ordered to perform 250 hours of public service, to pay court costs and restitution.

On August 2, 1988, the State filed a petition for revocation of defendant's probation. It was alleged that defendant was placed on intensive probation on July 6, 1988, and that he violated it when he left the Young Men's Fellowship Halfway House on July 30, 1988, without permission and did not return. Defendant subsequently admitted to the allegations in the petition, and the matter proceeded to a sentencing hearing.

At the sentencing hearing on February 15, 1989, defendant submitted several letters from individuals who were in contact with defendant when he was incarcerated at Rikers Island in New York. When defendant left the halfway house, he travelled to New York. He was arrested in New York and spent a few months in jail there

before being returned to Illinois. These letters were written by a clergyman (Brother), psychiatrist, social worker, an adult detainee/law clerk, and defendant.

Defendant was called to testify on his own behalf. He said that he left the halfway house because there were too many gang members in the house as well as in the surrounding neighborhood. Defendant said he was not a member of a gang, but was asked constantly if he was. He was threatened to join a gang. Defendant did not talk to a counselor, the probation department or his attorney about his problem but decided not to stay at the halfway house. His mother would not let him stay with her so defendant went to New York to stay with his grandmother.

During cross-examination defendant was asked about his presentence investigation report wherein his counselor stated that defendant wore gang-related clothing. Defendant said that he did not know that certain colors meant gang affiliation because he was not a gang member. He said that he was always on time in returning to the halfway house. Defendant was only in the halfway house nine days when he left. He did not perform other conditions of his sentence such as public service, payment of costs, or restitution.

The trial court noted the seriousness of the number of burglaries as well as defendant's escape conviction. It cited defendant's violation of probation and that defendant posed a threat to society. The court imposed a sentence of four years' imprisonment on each of the seven convictions. It then ordered some of the terms to run concurrently but that each sentence or group of concurrent sentences run consecutively to one another. In other words, defendant was sentenced to four consecutive sentences of four years each for a total of 16 years' imprisonment.

Another hearing was held on February 23, 1989, pursuant to defendant's motion to reconsider sentence. Defendant cited section 5—8—4(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(c)(2)) in arguing that the aggregate of consecutive sentences shall not exceed the maximum term for the two most serious felonies involved. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(c)(2).) The court then divided the six burglaries into two groups of three each. It imposed a six-year term of imprisonment on each conviction, each term to run concurrently with the terms in that group. The two groups were to run consecutively to each other, and a consecutive term of four years' imprisonment for escape was ordered. In total defendant was ordered to serve 16 years in the penitentiary.

On appeal defendant contends that the trial court abused its discretion in sentencing him to consecutive terms of imprisonment on the burglary convictions. He also claims that it was an abuse of discretion to sentence him to more than the minimum term on the burglary convictions. Defendant points to his age, lack of a prior criminal record, the nonviolent nature of his crimes, his unstable family background, and his rehabilitative potential as factors which show an abuse of discretion in the sentences imposed. Defendant requests that the sentences for the burglary convictions be modified to run concurrently and that terms of imprisonment be reduced to three years for each burglary conviction.

■■ ■ Although defendant has not raised an issue with respect to the sentence imposed pursuant to his motion to reconsider sentence, we are concerned about the manner in which the trial court modified defendant's sentences for the burglary convictions at the February 23, 1989, hearing. Defendant did raise the issue before the trial court. At the hearing to reconsider sentence, the trial court changed the groupings of burglaries from three groups to two groups. Each group was composed of three burglary convictions with the sentences on each to run concurrently to one another within the group and then the sentences for each group were to run consecutively to one another. This regrouping was done based upon the State's request. The sentences on the burglary convictions are before this court in two consecutive groupings.

In regrouping the burglary sentences, the trial court changed the sentence on each burglary conviction from four to six years and ran each six-year term concurrently to those sentences in the group. The two groups were to run consecutively to one another. When defendant objected to this "increase," the trial court found that defendant's motion to reconsider brought the entire matter back before the court for resentencing. It also noted that the total of the sentences was not increased but remained the same, *i.e.*, 12 years.

Defendant's motion to reconsider requested a reduction in defendant's sentence, and the trial court had the power to reduce the sentence under section 5—8—1(c) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c)). However, the section expressly proscribes an increase in sentence after it is imposed. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c); *People v. Hills* (1980), 78 Ill. 2d 500.) In order to achieve a total of 12 years' imprisonment, the trial court increased each burglary sentence from four years to six years in the two groups and then ran the groups consecutively to one another.

The trial court apparently believed that the entire matter of resentencing was before it based upon defendant's motion, similar to a remand of resentencing under section 5—5—4. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—4; *People v. Giller* (1989), 191 Ill. App. 3d 710.) However, under section 5—8—1(c) a sentence may not be increased when a motion to reduce is made. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c).) Although the total number of years for all of the sentences remained the same, the sentences for each group ordered to be served consecutively are not one sentence. (See generally *People v. Cunitz* (1978), 59 Ill. App. 3d 701, 705.) The fact that the total number of years remained the same due to the consecutive nature of the sentences does not change the fact that each individual sentence was increased. In this appeal, for example, should this court determine that consecutive sentences were not required, defendant would be faced with concurrent terms of six years' imprisonment rather than four years' imprisonment on each burglary conviction. The trial court improperly increased the individual sentences on the six burglary convictions, and we direct that the sentence for each burglary conviction be reduced from a six-year term of imprisonment to a four-year term of imprisonment. The remaining aspects of the sentences for the burglary convictions remain the same, *i.e.*, two groups of burglary convictions; those sentences of four years' imprisonment for convictions in the group to run concurrently; and the sentences for each group are to run consecutively to one another for a total of eight years' imprisonment.

Defendant contends that the trial court abused its discretion in sentencing defendant to consecutive sentences for the burglary convictions although the trial court specifically found consecutive sentences were necessary to protect the public (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b)). He argues that consideration of the nature and circumstances of the offense and the history and character of defendant militate toward minimum concurrent sentences. He relies on his family history, age, lack of significant criminal record, and the nonviolent nature of the crimes to justify concurrent, minimum prison sentences. In addition, defendant asserts that the length of the terms of imprisonment does not reflect his potential for rehabilitation.

■ The imposition of a sentence is a matter of judicial discretion, and the standard of review to determine whether a sentence is excessive is whether a trial court abused that discretion. (*People v. O'Neal* (1988), 125 Ill. 2d 291; *People v. Powell* (1987), 159 Ill. App. 3d 1005.) In appropriate circumstances, Illinois appellate courts have

reduced a defendant's sentence from consecutive terms to concurrent terms. (*People v. Griffin* (1982), 113 Ill. App. 3d 184.) Consecutive sentences should be imposed sparingly. (*Powell*, 159 Ill. App. 3d at 1012.) The record must show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public. *O'Neal*, 125 Ill. 2d at 299; *People v. Pittman* (1982), 93 Ill. 2d 169.

■■■ ■ The record supports the court's finding that consecutive sentences were necessary to protect the public from further criminal conduct by defendant. The trial court considered the seriousness of the burglary offenses and the fact that defendant had committed the six offenses in a short span of time. Although defendant urges the nonviolent nature of the crimes, a crime need not be one of violence to be considered serious. (*People v. Waud* (1977), 69 Ill. 2d 588.) Consecutive sentences can properly be imposed for nonviolent crimes. (See *People v. Hoyt* (1984), 129 Ill. App. 3d 331.) A propensity toward criminal conduct may be considered in sentencing. (*Hoyt*, 129 Ill. App. 3d at 334; *People v. Edmondson* (1982), 106 Ill. App. 3d 716.) Defendant also had committed the offense of escape, a Class 2 felony.

The presentence report indicated that defendant's criminal background consisted only of convictions of resisting/obstructing a peace officer and theft under $300. He was placed on six months' conditional discharge and ordered to pay a fine, costs and fees for both. His troubled family history was also provided to the trial court in the presentence report and testimony at the hearing. Where mitigating evidence is before the court, it is presumed that the trial court considered it absent some indication, other than the sentence, to the contrary. (See *People v. Abrego* (1986), 142 Ill. App. 3d 973.) The court herein noted that it could have imposed a greater penalty.

Defendant's age is of little consequence when a trial court determines that a lengthy term is warranted. (*People v. Castro* (1983), 114 Ill. App. 3d 984.) Herein, the trial court found that consecutive terms were necessary to protect the public after considering the nature and circumstances of the offenses and defendant's history and character. Defendant relies on *People v. Carini* (1986), 151 Ill. App. 3d 264, and *People v. Gray* (1984), 121 Ill. App. 3d 867, where consecutive sentences were vacated because defendants were young and had had either no criminal record or only a misdemeanor conviction. However, in both cases consecutive terms were imposed for concealment of a homicidal death. Defendant's offenses in the instant case involve numerous burglaries to businesses in a short span of time until he

was arrested. The record supports a need to protect the public from further criminal conduct by defendant. Defendant's troubled family history and lack of a significant criminal record need not outweigh the seriousness of the offenses or other aggravating factors. (See *People v. Brajcki* (1986), 150 Ill. App. 3d 506.) The imposition of consecutive sentences for the burglary convictions is supported by the record, and we find no abuse of discretion.

■ Defendant also contends that his rehabilitative potential is not reflected in the sentences. He refers to the letters submitted in mitigation and the fact that he pleaded guilty to the offenses and the probation violation. (*People v. Bergman* (1984), 121 Ill. App. 3d 100.) Although he acknowledges that he failed at his first opportunity at rehabilitation, he claims that it was unrefuted that he left the halfway house out of fear for his life from gangs. We note that the presentence report showed that defendant was confronted several times by the halfway house for wearing gang-related clothing and items. Also, defendant never sought any assistance from counselors or others regarding this problem but merely left the facility. He also travelled to New York.

In any event, the trial court was fully aware that defendant had pleaded guilty to the offenses and the probation violation. While defendant may not be sentenced on revocation of probation for the conduct constituting the probation violation, a trial court can properly consider defendant's conduct while on probation to assess "rehabilitative potential." (*People v. Vilces* (1989), 186 Ill. App. 3d 983, 986.) And, while rehabilitative potential must be considered, such consideration does not outweigh the seriousness of the offense or other aggravating factors. (*Brajcki*, 150 Ill. App. 3d at 515.) The imposition of four-year terms of imprisonment for each burglary conviction is not an abuse of discretion.

■ Although defendant has not raised an issue with respect to the four-year consecutive term of imprisonment for the escape conviction, we have determined from the record that the trial court improperly imposed a consecutive term of imprisonment for escape. Defendant was indicted for the offense of escape (Ill. Rev. Stat. 1987, ch. 38, par. 31—6(a)), on April 20, 1988, and subsequently pleaded guilty to that offense on June 2, 1988. Following a revocation of probation, defendant was sentenced on the escape offense to a four-year term of imprisonment to run consecutively to the sentences for the burglary convictions. It is apparent from the record of the February 23, 1989, hearing (as well as an indication at the February 15, 1989, hearing) that the trial court was operating under the

belief that a consecutive term of imprisonment was mandatory for the escape conviction herein.

There are two separate escape provisions: section 31—6 of the Criminal Code of 1961 and section 3—6—4 of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, pars. 31—6, 1003—6—4.) There is no inconsistency between the two provisions and no reason to read either as creating any exception to the other. (*People v. Simmons* (1981), 88 Ill. 2d 270, 275.) The provisions simply express different, but harmonious, legislative concerns. (*Simmons*, 88 Ill. 2d at 275.) It has been determined that the State is free to prosecute under whichever carries the greater penalty. *Simmons*, 88 Ill. 2d at 276.

Under section 5—8—4(g) of the Unified Code of Corrections, a sentence under section 3—6—4 for escape or attempted escape shall be served consecutively to the terms under which the defendant is held by the Department of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(g).) The statute mandates a consecutive sentence for this particular offense of escape, and a trial court would have no discretion to impose a concurrent sentence. (*People v. Racinowski* (1979), 78 Ill. App. 3d 954, 964.) Section 31—6 does not carry a mandatory consecutive sentence, although a consecutive sentence is permissible should one be required under the provisions of section 5—8—4(b) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b)). See *People v. Nelson* (1975), 26 Ill. App. 3d 227; *People v. Piper* (1974), 20 Ill. App. 3d 94; *People v. Gardner* (1973), 15 Ill. App. 3d 255; see generally *People v. Marble* (1982), 91 Ill. 2d 242.

The record of the February 23, 1989, hearing shows that the parties debated whether defendant's escape on April 12, 1988, after being remanded to the Lake County jail was an escape from a "penal institution." Similar arguments have been raised by defendants over the issue of which provision of escape, section 31—6 or section 3—6—4, should be applied to their offense for prosecution purposes. (*E.g.*, *Marble*, 91 Ill. 2d 242; *Simmons*, 88 Ill. 2d 270.) However, we fail to see how this matter was relevant in determining whether a consecutive sentence was mandated herein. Defendant was indicted and pleaded guilty to escape as provided under section 31—6(a) (which in part concerns escape from a penal institution). (Ill. Rev. Stat. 1989, ch. 38, par. 31—6(a).) Section 31—6 does not require a mandatory consecutive sentence. The trial court failed to exercise its discretion in imposing a consecutive sentence for escape under the belief that such sentence was mandatory. See *People v. Talley* (1981), 97 Ill. App. 3d 439.

We ordinarily would remand the cause to the trial court for re-sentencing on the escape conviction to determine whether the sentence should run concurrently with a burglary conviction or consecutively to any of the burglary convictions. We are aware, however, that the trial judge has retired, and the imposition of a consecutive, four-year term of imprisonment for the escape conviction is not supported by the record. While there is a sufficient basis in the record to support two consecutive groupings of four-year sentences for the burglary convictions, totalling eight years of imprisonment, a second consecutive four-year term for escape is not justified on the basis of the record. The four-year term of imprisonment for escape is directed to run concurrently with the sentence in the burglary conviction in No. 88—CF—589.

Based upon the foregoing, the judgment of the circuit court is affirmed, and the sentences are modified as follows: four years' imprisonment for burglary convictions in Nos. 88—CF—589, 88—CF—590, and 88—CF—625, each term to run concurrently with each other; four years' imprisonment for burglary convictions in Nos. 88—CF—591, 88—CF—592, and 88—CF—593, each term to run concurrently with each other; the terms of imprisonment for Nos. 88—CF—591, 88—CF—592, and 88—CF—593 to run consecutively to the terms of imprisonment in Nos. 88—CF—589, 88—CF—590, and 88—CF—625; and a four-year term of imprisonment for No. 88—CF—596 to be served concurrently with the term of imprisonment imposed in No. 88—CF—589. Credit for time served as previously provided in the mittimuses remains in place and is not affected by this modification.

Affirmed in part; modified in part.

WOODWARD and INGLIS, JJ., concur.